**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION**

**JUDY BRASEL**                                                                                **PLAINTIFF**

        **v.**               **Civil No. 05-3057**

**THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA d/b/a PRUDENTIAL FINANCIAL**                             **DEFENDANT**

<u>**O R D E R**</u>

Now on this 14th day of July, 2006, comes on for consideration plaintiff's **Motion For Summary Judgment** (document #8), and from said motion, the response thereto, and the Administrative Record, the Court finds and orders as follows:

1. Plaintiff Judy Brasel ("Brasel") alleges that defendant The Prudential Insurance Company of America ("Prudential") wrongfully terminated her Short Term Disability ("STD") benefits, and wrongfully terminated processing of her claim for Long Term Disability ("LTD") benefits, under an employee benefits plan (the "Plan") issued by Prudential to her employer, Bank of the Ozarks, Inc. Brasel seeks a reinstatement of STD, with interest, and processing of her application for LTD, as well as attorney's fees.

Prudential admits that Brasel has exhausted her administrative remedies, and that this matter is ripe for judicial review.

2. Both parties have treated the matter now under consideration as one for summary judgment, but the procedural posture of this case is that of an administrative appeal. The

usual presumptions applicable to motions for summary judgment do not apply. The facts are those contained in the Administrative Record, and the standard for review is dictated by the terms of the Plan.

Denial of ERISA benefits is "reviewed on a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." **Firestone Tire & Rubber Co. v. Bruch**, **489 U.S. 101, 115 (1989)**. If the administrator has discretionary authority, its eligibility decisions are reviewed for abuse of that discretion. **Groves v. Metropolitan Life Insurance Co.**, **438 F.3d 872 (8th Cir. 2006)**.

The parties agree that the Plan in this case gives Prudential discretion to determine eligibility for benefits, and therefore the Court will review Prudential's benefits decisions for abuse of discretion. That standard has been described as follows:

> In applying an abuse of discretion standard, we must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision. A reasonable decision is fact based and supported by substantial evidence. We may consider both the quantity and quality of evidence before a plan administrator. And we should be hesitant to interfere with the administration of an ERISA plan.

**Groves**, **438 F.3d 872, 875** (internal citations and quotation marks omitted).

"Substantial evidence" is "more than a scintilla but less

than a preponderance." **Leonard v. Southwestern Bell Corp. Disability Income Plan**, 341 F.3d 696, 701 (8th Cir. 2003).

Although abuse of discretion review puts a heavy burden on a participant whose benefits have been terminated, it does not amount to "rubber-stamping the result." A termination decision must be reasonable, i.e., "supported by substantial evidence that is assessed by its quantity and quality." **Torres v. UNUM Life Insurance Co. of America**, 405 F.3d 670, 680 (8th Cir. 2005).

3. With the foregoing principles in mind, the Court has examined the Administrative record, and notes the following reasons given by Prudential for denying Brasel's claim as it proceeded through Prudential's multi-layered appeals process:

(a) Brasel was initially awarded STD benefits starting April 20, 2001, and continuing through May 20, 2001. The letter notifying her that benefits were going to be paid, which was dated August 22, 2001, stated that "the medical documentation in file supports disability payments." These benefits were then extended through June 30, 2001, "to allow [Brasel] adequate time to cope with an acute situational reaction."

(b) On November 16, 2001, Prudential notified Brasel that her STD benefits were being terminated as of July 1, 2001. The notification letter gave the following reasons for termination:

* CT scan of the head, EMG, and lab work dated after April 6, 2001, were within normal limits, and therefore "not

-3-

consistent with a physical impairment so severe as to prevent you from performing the duties of your sedentary occupation."

* Medications taken since May 11, 2001, had caused "no reported side effects or changes through August 1, 2001."

* Mental Status Examination was normal.

* There is "no medical evidence of an impairment, either physical or mental, that would prevent you from performing the duties of your regular occupation beyond" June 30, 2001.

(c) Brasel appealed the termination of her benefits, and on March 1, 2004, Prudential determined that it had been right to terminate those benefits. Fleshing out the overall conclusion that while Brasel "has medical conditions from which she may have continuing symptomology, and which may benefit from continuing treatment," those conditions do not prevent her from working, the notification letter gave the following reasons for affirming termination:

* Brasel had had the conditions upon which she based her STD claim for a long time before she stopped working - depression since 1994, headaches since 1997, and fibromyalgia for at least five years before stopping work.

* Medical documentation did not show a significant change in Brasel's "chronic conditions" beyond June 30, 2001, when "a long term psychiatric condition that appears to have been exacerbated by family and job related stressors" had "returned to her baseline, a non-impairing condition."
* Neurologic exam, CT scan, and MRI were negative, and the headaches were diagnosed as tension headaches, with "no documentation that supports" a conclusion that the headaches impaired Brasel's ability to work.
* EMG, lab work, and colonoscopy in April, 2001, were normal.
* There is no documentation of a functional impairment from fibromyalgia that would prevent light duty work.
* There was no documentation of a significant change in Brasel's "chronic condition proximal to when she went out of work."

(d) Brasel again appealed, and was again turned down. The notification letter, dated June 25, 2004, built upon the previous letters of explanation, and in addition relied upon the review of an outside reviewing physician (Dr. Amy Hopkins, who is board certified in internal and occupational medicine). Dr. Hopkins pointed out various inconsistencies in Brasel's medical records, and stated "that many of the symptoms Ms. Brasel reports,

including headaches, pain, sleep disturbances and muscles [sic] aches, can be attributed to a psychiatric condition, although this did not appear to be considered as an etiology of her conditions." It was Dr. Hopkins' conclusion that "there is a lack of evidence in the records of any medically determinable findings which separately, or in combination, support the presence of any specific functional impairment which would have prevented Ms. Brasel from performing the duties of a sedentary or light duty occupation since July 1, 2001." This was, as Prudential noted, "consistent with our assessment," and that assessment was, therefore, affirmed.

(e) Brasel requested a third, and final, review by Prudential. This time, Prudential obtained two outside consultant reviews. One physician (Dr. Phillip Marion, specializing in physical medicine and rehabilitation) was requested to review Brasel's "physical conditions and functionality only." The other (Dr. Elliott Wolf, specializing in psychiatry) was requested to review Brasel's "psychological level of functioning."

On July 26, 2005, Prudential again decided that it had correctly terminated Brasel's benefits. The review of her psychological functioning noted certain reports of "cognitive impairments of memory and concentration and difficulties with social interaction," and a history of depression, but noted that even Brasel did not claim that she had a psychiatric impairment.

-6-

The review of physical conditions and functionality noted "a long history of chronic pain for which Ms. Brasel has seen multiple providers," including "chronic non-specific neck, back, and musculoskeletal pain." It also noted that "extensive radiological studies including cervical spine CT scans, cervical spine x-rays, brain CT scans, thoracic spine x-rays, lumbar spine CT scans and abdominal x-rays as well as electrodiagnostic studies, lab studies, and neurological examination have been unremarkable or normal." From this, the reviewing physician concluded that the pain complaints "appear to be subjective."

Based on the foregoing, Prudential once again concluded that there "is no documentation of a physical impairment that would have prevented Ms. Brasel from performing her regular occupation as a Head Teller from July 1, 2001, to present," except for a brief period when she was recovering from knee surgery.

4. Brasel makes three basic arguments in support of her contention that Prudential abused its discretion in terminating her benefits. She contends that there was no documented medical improvement to justify the termination; that the administrator disregarded reliable information supporting her claim for disability; and that the medical evidence shows that she cannot return to her work as a Head Teller.

5. The first of these contentions brings into focus the fact that Prudential concluded Brasel had something akin to a

nervous breakdown on or about April 6, 2001, related to stress at work, and that she had recovered from this acute event by June 30, 2001. The existence of an acute event is supported by the information provided to Prudential's agents in telephone contacts with Brasel and her treating physicians. It is also supported by the clinic notes of Brasel's treating physicians, which reflect that Brasel was emotionally distraught in the period immediately after she stopped work. Clinic notes containing this type of information diminished gradually, however, and the Court finds that the diminution of medical records documenting distress is sufficient evidence to support Prudential's determination that Brasel had weathered an acute event and could return to work, in spite of admitted problems with chronic pain and headaches.

6. Brasel's contention that Prudential disregarded reliable information supporting her claim refers to the results of a Functional Capacities Evaluation ("FCE") conducted by Don Dahlke, a Certified Functional Evaluator. Dahlke conducted the FCE on March 31, 2005, and issued a report that same date. He noted that Brasel "gave a reliable effort, with 51 of 51 consistency measures within expected limits," and that she "passed all criteria for validity and demonstrates no signs of symptom magnification or other inappropriate illness response." His testing reflected that Brasel could perform sedentary work, but only for 4-6 hours per day. The job of a Head Teller is classified as light duty work,

which requires more physical strength and agility than sedentary work.

The Administrative Record does, however, reflect that Prudential's reviewer Dr. Marion considered Dahlke's FCE in formulating his opinion, upon which Prudential then relied. While Dr. Marion did not make any specific comment on the FCE, it would be unrealistic to require a reviewer to make specific comment on every item of evidence submitted for review.

7. Finally, Brasel contends that Prudential abused its discretion in finding that she could return to work as a Head Teller in July, 2001, given the opinions of her treating physicians; Dahlke's FCE; a Vocational Evaluation ("VE") by Dale Thomas, a certified rehabilitation counselor; and a finding by the Social Security Administration that she is disabled for purposes of receiving Social Security benefits.

The thrust of all Prudential's appeals decisions was that there was no objective medical evidence to support the opinions of Brasel's treating physicians and her psychologist that she was unable to work as a Head Teller. Even when the symptoms of the alleged disabling condition are mostly subjective, as is the case with fibromyalgia, the Eighth Circuit has held that "[g]enerally, [i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." **Johnson v. Metropolitan Life Insurance Co.**, **437 F.3d 809, 813 (8th Cir. 2006)**(internal

quotation marks and citations omitted). In addition, specifically with regard to fibromyalgia, the Eighth Circuit has held that "trigger-point findings consistent with fibromyalgia constitute objective evidence of the disease." **Johnson, 437 F.3d at 814.** Thus Brasel's alleged disabling condition is not one as to which it was impossible to offer objective evidence. However, the evidence offered by Brasel did not include "trigger-point findings *consistent* with fibromyalgia," but only trigger-point findings *and* a diagnosis of fibromyalgia. There is nothing to indicate when or how or by whom that diagnosis was reached, nor any evidence that Brasel had the diagnostic eleven out of eighteen positive trigger points which is commonly accepted as diagnostic. See **Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)**(rule of thumb is that patient must have at least 11 of 18 tender spots in fixed location on body to be diagnosed with fibromyalgia).

In addition, the fact that the Social Security Administration found Brasel disabled, while it is admissible to support a claim for benefits, is not binding, inasmuch as a private contract governs Brasel's claim while federal law dictated the outcome of the Social Security claim. **Dahlin v. Metropolitan Life Insurance Co., 255 F.Supp.2d 987 (N.D. Iowa, 2003).**

For these reasons, the Court concludes that Prudential did not abuse its discretion when it determined that Brasel had ceased to be eligible for STD on June 30, 2001.

8.  Because Prudential terminated Brasel's STD before she had received benefits long enough to qualify for LTD, processing of her LTD claim was discontinued.  Brasel contends that this was in error.  Because the Court has found in favor of Prudential on the STD claim, it follows that Prudential's decision on the LTD claim was appropriate as well.

9.  For the foregoing reasons, the Court finds that a reasonable person could have reached the decisions reached by Prudential as to Brasel's claims for both STD and LTD.  Brasel's Motion For Summary Judgment will, therefore, be denied, and Prudential's decisions will be affirmed.

**IT IS THEREFORE ORDERED** that Brasel's **Motion For Summary Judgment** (document #8) is **denied**, and Prudential's decision to terminate Brasel's short term disability benefits, and to discontinue processing of her claim for long-term disability benefits, are **affirmed**.

**IT IS SO ORDERED.**

                                                *Jimm Larry Hendren*
                                                **JIMM LARRY HENDREN**
                                                **UNITED STATES DISTRICT JUDGE**